Nos. 115,504
115,505

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BONNIE L. CASTILLO,
*Appellant*.

SYLLABUS BY THE COURT

1.

A challenge to a district court's subject matter jurisdiction may be raised for the first time on appeal.

2.

Kansas' DUI law, K.S.A. 2016 Supp. 8-1567, is a self-contained criminal statute, which means that all essential components of the crime, including the elements, severity levels, and applicable sentences, are included within the statute.

3.

DUI sentences are not calculated pursuant to the Kansas Sentencing Guidelines Act.

4.

Kansas statutes show legislative intent that the Secretary of Corrections no longer supervise DUI offenders post-incarceration.

5.

Inmates on postrelease supervision remain in the legal custody of the Secretary of Corrections and are subject to the orders of the Secretary. In contrast, DUI offenders are on postimprisonment supervision and they remain subject to the jurisdiction of the district court.

6.

When a DUI offender violates the conditions of postimprisonment supervision, a district court has the discretion to revoke that supervision and to impose additional jail time.

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed June 9, 2017. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GARDNER, J., and WALKER, S.J.

GARDNER, J.: This appeal asks whether the district court has the authority to revoke the postimprisonment supervision of offenders convicted of felony DUI. The district court found that it had the authority to do so, then revoked Bonnie L. Castillo's supervision and remanded her to jail. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Castillo's underlying convictions relevant to this case are two convictions for driving under the influence (DUI). On October 4, 2013, Castillo drank a fifth of bourbon then drove to the liquor store to purchase more. While driving home, she was arrested for DUI and admitted that she was intoxicated to the extent that she could not safely operate her vehicle. Six days later, on October 10, 2013, nearly the same events occurred— Castillo drank a fifth of bourbon over a 3-hour period, then drove to the liquor store and purchased another fifth of bourbon. While driving home, Castillo was arrested for DUI and she admitted that she was intoxicated to the extent that she could not safely operate her vehicle.

Castillo's criminal history at the time included the following: 10 DUIs, a pedestrian under the influence, two counts of transporting an open container, weapons charges, drug charges, escape from custody, batteries, thefts, robbery, fleeing and attempting to elude, and other charges. Pursuant to a plea agreement, Castillo pleaded guilty to both counts of driving under the influence, and the State recommended that Castillo be sentenced to two consecutive 1-year sentences. For each count of DUI, the district court sentenced Castillo to a 1-year term, imposed a $2,500 fine, and ran the sentences consecutively. Additionally, the district court imposed 1-year postrelease supervision periods.

After serving 2 years in jail and being released, Castillo violated the terms of her postimprisonment supervision. Undeterred by her DUI jail sentences, she violated the terms of her supervision by submitting breath analysis tests with blood alcohol levels of .067, .212, and .262 and by failing to submit other breath analyses as directed by the alcohol monitoring device. Castillo stated that she failed to submit them because she was "passed out." The district court found that Castillo had violated her postimprisonment supervision, then it revoked her supervision and ordered her to serve the balance of her

3

supervision period in county jail. Castillo appeals, arguing that the district court lacked jurisdiction to do so.

*Should this Court Consider Castillo's Claim?*

We first address the State's argument that we should not consider the merits of Castillo's jurisdictional challenge. The State argues that Castillo did not raise that issue before the district court and has not briefed why the issue is properly before this court, in violation of Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34).

Generally, issues not raised before the trial court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, Syl. ¶ 9, 266 P.3d 516 (2011). Exceptions to the general rule exist, *State v. Spotts*, 288 Kan. 650, 652, 206 P.3d 510 (2009), but if an issue was not raised below, "there must be an explanation why the issue is properly before [this court]." Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 35). The Kansas Supreme Court has directed us to strictly enforce that rule. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). Castillo's brief does not state why her jurisdictional challenge properly falls within an exception to the general rule which would permit us to address it for the first time on appeal.

Nonetheless, the issue whether a district court had subject matter jurisdiction over a case may be raised at any time, "whether for the first time on appeal or even on [this court's] own motion." *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010). Castillo does not specify what type of jurisdiction she believes the district court lacked, but she argues that the district court did not have the *authority* to revoke her "post-release supervision" and impose additional jail time. Because Castillo challenges the district court's authority, we construe her argument as one challenging the district court's subject matter jurisdiction. See *Jahnke v. Blue Cross and Blue Shield of Kansas, Inc.*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015) (stating subject matter jurisdiction authorizes a

4

court to hear a case). Castillo may raise the issue of subject matter jurisdiction at any time. *Sales*, 290 Kan. at 135. Therefore, we find Castillo's jurisdictional challenge is properly before this court and will address its merits.

DID THE DISTRICT COURT HAVE JURISDICTION TO IMPOSE ADDITIONAL JAIL TIME?

Castillo argues that the district court lacked jurisdiction to revoke her postrelease supervision and to impose additional jail time. Castillo contends that the period following her release is more akin to postrelease supervision than to probation because she served her entire sentence and was released to community corrections for supervision. Castillo argues that the postrelease period for felony DUI should be treated the same way as a postrelease period from other felony convictions, which are governed by the sentencing guidelines. Castillo asserts that only the agency supervising such release has authority to revoke the release, and that agency was the Department of Corrections, not the district court which lost its jurisdiction upon sentencing her.

*Our Standard of Review*

"Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited." *Jahnke*, 51 Kan. App. 2d at 686. A court must have subject matter jurisdiction in order to hear and decide a case. 51 Kan. App. 2d at 686. Similarly, interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Courts must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014).

5

*Postrelease Supervision Differs from Postimprisonment Supervision*

In Castillo's case, various terms were used to describe the period of supervision following her initial jail sentence. At sentencing, the district court referred to that period of time as "postrelease supervision." However, the related sentencing journal entry repeatedly refers to it as "postimprisonment supervision." Later, when the district court considered Castillo's postimprisonment violations, the district court acknowledged that Castillo was not sentenced to probation but stated that the period following Castillo's initial incarceration was "akin to probation." And the related journal entry imposing additional jail time refers to the period that followed Castillo's initial jail sentence as "postimprisonment supervision."

"Postrelease supervision," as defined in the Kansas Sentencing Guidelines Act (KSGA), submits the offender to the supervision of the Secretary of Corrections:

> "'[P]ostrelease supervision' means the release of a prisoner to the community after having served a period of imprisonment or equivalent time served in a facility where credit for time served is awarded as set forth by the court, *subject to conditions imposed by the Kansas parole board and to the secretary of corrections' supervision*." (Emphasis added.) K.S.A. 1993 Supp. 21-4703(q).

"'Every inmate while on postrelease supervision shall remain in the legal custody of the secretary of corrections and is subject to the orders of the secretary.'" *Phillpot v. Shelton*, 19 Kan. App. 2d 654, 658, 875 P.2d 289 (1994) (quoting K.S.A. 1993 Supp. 22-3717[i]).

In contrast, the term "postimprisonment supervision" is not defined by statute. We have explained that: "Post-release supervision in DUI cases is also known as post imprisonment supervision." *State v. Sampsel*, No. 112,291, 2015 WL 5311995, at *1 (Kan. App. 2015) (unpublished opinion). And we have consistently used the term "postimprisonment supervision" in referring to the supervisory period following a felony

6

DUI offender's release from imprisonment. K.S.A. 2016 Supp. 8-1567(b)(3). See, *e.g.*, *State v. Fisk*, No. 115,917, 2017 WL 840281 (Kan. App. 2017) (unpublished opinion); *State v. Remy*, No. 114,732, 2016 WL 6822484 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* December 19, 2016.

*Our DUI Statute Is Self-contained*

Castillo was sentenced pursuant to K.S.A. 2016 Supp. 8-1567, the felony DUI law. That statute is a "self-contained habitual criminal statute." *State v. Key*, 298 Kan. 315, 321, 312 P.3d 355 (2013) (citing *State v. Osoba*, 234 Kan. 443, 444, 672 P.2d 1098 [1983]). "Kansas' DUI law is a self-contained criminal statute, which means that all essential components of the crime, including the elements, severity levels, and applicable sentences, are included within the statute." *State v. Reese*, 300 Kan. 650, 654, 333 P.3d 149 (2014). The statute is also a habitual criminal statute because it imposes progressively enhanced sentences for repeat offenders such as Castillo:

> "K.S.A. 8-1567 is also considered a habitual criminal or recidivist statute because it imposes progressively enhanced sentences for repeat offenders. The philosophy underlying a recidivist or habitual criminal statute is that where a less severe penalty has failed to deter an offender from repeating a violation of the same law, a more severe penalty is justified to serve as an object lesson that hopefully will cause the offender to accomplish his or her reformation. *City of Dodge City v. Wetzel,* 267 Kan. 402, 409, 986 P.2d 353 (1999)." *Reese*, 300 Kan. at 654-55.

Because our DUI law is self-contained, DUI sentences are not calculated pursuant to the KSGA. *Reese*, 300 Kan. at 654; *Key*, 298 Kan. at 321-22. This fact has several ramifications. For example, "because DUI sentencing is not covered by the Kansas sentencing guidelines, we have jurisdiction to consider an appeal of a presumptive sentence and may set aside a defendant's sentence if the defendant's sentence was entered as a result of partiality, prejudice, oppression, or corrupt motive." *State v. Montgomery*,

7

No. 112,652, 2015 WL 7434279, at *2 (Kan. App. 2015) (unpublished opinion) (citing *State v. Heim*, No. 108,124, 2013 WL 5925905, at *2 [Kan. App. 2013] [unpublished opinion], *rev. denied* 300 Kan. 1105 [2014]). And a district court has no jurisdiction to modify a felony DUI sentence once it has been legally imposed, because the DUI statute does not give the court such authority. *State v. Anthony*, 274 Kan. 998, 1002, 58 P.3d 742 (2002).

Similarly, convictions and sentences under K.S.A. 2016 Supp. 8-1567 are specifically excepted from provisions of the probation violation statute by K.S.A. 2016 Supp. 21-6804(i)(1), which states: "The sentence for the violation of the felony provision of . . . K.S.A. 2016 Supp. 8-1567 . . . shall be as provided by the specific mandatory sentencing requirements of that section and shall not be subject to the provisions of this section." See also K.S.A. 2016 Supp. 22-3716(b)(3)(B) (requiring intermediate sanctions for probation violations "[e]xcept as otherwise provided"). Thus we have held that although a district court generally must consider intermediate sanctions under K.S.A. 2016 Supp. 22-3716 before revoking probation, a district court need not do so before revoking an offender's postimprisonment supervision in a DUI case. *Remy*, 2016 WL 6822484, at *3; see *Fisk*, 2017 WL 840281. In *Remy*, we found that because the specific statute pertaining to DUIs controls over a general statute regarding probation, the "provisions of K.S.A. 2015 Supp. 8-1567, the DUI statute, were the only appropriate statutory provisions for the district court to consider in determining what discretionary actions to take in sentencing Remy for his supervision violations." *Remy*, 2016 WL 6822484, at *3. Castillo's argument that we should treat postimprisonment supervision for DUI offenses as we do postrelease supervision from other felony convictions which are governed by the sentencing guidelines, thus, has no logical appeal.

*Kansas Statutes, Read Together, Show the District Court Retains Jurisdiction over Postimprisonment Supervision*

Nor does Castillo's position have any basis in the relevant statutory scheme. The DUI statute, K.S.A. 2016 Supp. 8-1567, requires jail time for a fourth DUI conviction and directs the district court to impose a mandatory 1-year period of postimprisonment supervision. The statute provides that the district court determines whether the DUI offender, upon release from imprisonment, is supervised by a community correctional services program or by court services during that mandatory 1-year period of supervision:

> "The court shall determine whether the offender, upon release from imprisonment, shall be supervised by community correctional services or court services based upon the risk and needs of the offender. The risk and needs of the offender shall be determined by use of a risk assessment tool specified by the Kansas sentencing commission. The law enforcement agency maintaining custody and control of a defendant for imprisonment shall cause a certified copy of the judgment form or journal entry to be sent to the supervision office designated by the court and upon expiration of the term of imprisonment shall deliver the defendant to a location designated by the supervision office designated by the court. After the term of imprisonment imposed by the court, the person shall be placed on supervision to community correctional services or court services, as determined by the court, for a mandatory one-year period of supervision, which such period of supervision shall not be reduced. . . . Any violation of the conditions of such supervision may subject such person to revocation of supervision and imprisonment in jail for the remainder of the period of imprisonment, the remainder of the supervision period, or any combination or portion thereof." K.S.A. 2016 Supp. 8-1567(b)(3).

One option is thus for the district court to place the DUI offender on supervision by "court services." Court services officers, as the name implies, work for "the Kansas judicial branch or local judicial district [and are] responsible for supervising, monitoring or writing reports relating to adults or juveniles as assigned by the court, or performing

9

related duties as assigned by the court." K.S.A. 2016 Supp. 21-5413(h)(10). See K.S.A. 2016 Supp. 20-346a(b). Persons supervised by court services are, according to this statute, under the authority of the court for whom the court services officers work. See generally K.S.A. 2016 Supp. 22-3716.

Castillo focuses on the second option, when the court orders the DUI offender to be supervised by "community correctional services." Castillo contends that such supervision is postrelease supervision so she remains in the legal custody of the Secretary of Corrections and is subject to supervision by the Secretary and not the district court. Castillo specifically contends that because the statute provides that the "risk and needs of the offender" are determined by the "risk assessment tool specified by the Kansas sentencing commission," and the district court merely recommends, instead of sets, the conditions of release, a DUI offender cannot be in the custody or under the jurisdiction of the court. We find a logical fallacy in that conclusion, as a court's jurisdiction is not dependent on its ability to assess the risk and needs of the offender or to determine what the conditions of release are. And Castillo does not contend that the district court did not use the specified risk assessment tool to assess her risk and needs before ordering that she serve postimprisonment supervision. Compare *Montgomery*, 2015 WL 7434279. The issue before us does not concern the district court's authority to set conditions on a DUI offender's release, but instead concerns its authority to revoke a DUI offender's supervision after that offender has violated whatever conditions have been imposed by the court. See K.S.A. 2016 Supp. 21-6603(b).

When determining legislative intent, appellate courts must consider various provisions of an act and bring the provisions into workable harmony if possible. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1123, 307 P.3d 1255 (2013). The Kansas Community Corrections Act refutes Castillo's interpretation by recognizing the district court's authority to place individuals convicted of DUI under K.S.A. 8-1567 into a community correctional services program for supervision by the court. That Act states:

"[P]lacement of offenders in a community correctional services program by the court shall be limited to placement of adult offenders, convicted of a felony offense: . . . . who have been placed in a community correctional services program *for supervision by the court pursuant to K.S.A. 8-1567*, and amendments thereto." (Emphasis added.) K.S.A. 2016 Supp. 75-5291(a)(2)(G). This statute evidences legislative intent that district courts retain continuing jurisdiction over DUI offenders supervised by Community Corrections and provides no support for Castillo's argument that supervision is by the Secretary of Corrections rather than by the district court.

As if to remove any doubt, the Kansas Criminal Code defines "community correctional services program" in terms that unambiguously state that defendants assigned to its program remain under the continuing jurisdiction of the court and not under the supervision of the Secretary of Corrections:

> "(b) 'community correctional services program' means a program which operates under the community corrections act and to which a defendant is assigned for supervision, confinement, detention, care or treatment, subject to conditions imposed by the court. *A defendant assigned to a community correctional services program shall be subject to the continuing jurisdiction of the court and in no event shall be considered to be in the custody of or under the supervision of the secretary of corrections.*" (Emphasis added.) K.S.A. 2016 Supp. 21-6603(b).

This language means what it plainly says. See *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). Accordingly, a defendant, such as Castillo, who is placed under supervision in a community correctional services program remains subject to the jurisdiction and authority of the district court. The district court does not cede its jurisdiction to the Secretary of Corrections or to the supervising agency upon sentencing a DUI offender.

11

Consistently, the statute which authorizes postrelease supervision for non-DUI felonies expressly exempts K.S.A. 8-1567 from its scope. It states: "(a) *Except as otherwise provided by . . . K.S.A. 8-1567*, and amendments thereto; an inmate, including an inmate sentenced pursuant to K.S.A. 21-4618, prior to its repeal, or K.S.A. 2016 Supp. 21-6707, and amendments thereto, shall be eligible for parole after serving the entire minimum sentence imposed by the court, less good time credits." (Emphasis added.) K.S.A. 2016 Supp. 22-3717(a).

Legislative history further supports the conclusion that supervision after being imprisoned for a DUI felony is no longer postrelease supervision. We consider "'[t]he historical background and changes made in a statute . . . in determining legislative intent for the purpose of statutory construction.'" *State v. Kleypas*, 305 Kan. 224, 262, 382 P.3d 373 (2016), *cert. denied* 137 S. Ct. 1381 (2017). Previous versions of this DUI statute expressly required postimprisonment DUI offenders to be placed in the custody of the Secretary of Corrections for "postrelease supervision." For example, K.S.A. 2010 Supp. 8-1567(g)(2) stated:

> "After the term of imprisonment imposed by the court, the person *shall be placed in the custody of the secretary of corrections for a mandatory one-year period of postrelease supervision,* which such period of postrelease supervision shall not be reduced. During such *postrelease supervision*, the person shall be required to participate in an inpatient or outpatient program for alcohol and drug abuse, including, but not limited to, an approved aftercare plan or mental health counseling, as determined by the secretary and satisfy conditions imposed by the Kansas parole board as provided by K.S.A. 22-3717, and amendments thereto. *Any violation of the conditions of such postrelease supervision may subject such person to revocation of postrelease supervision* pursuant to K.S.A. 75-5217 et seq., and amendments thereto and as otherwise provided by law." (Emphasis added.)

12

But the 2011 revisions to the DUI statute removed those references to "postrelease supervision," and amended K.S.A. 8-1567 to its present form, set forth above. See L. 2011 ch. 105, § 19 (S.B. 6).

Courts presume legislatures intend purposeful change when they revise statutes. *Martin v. Kansas Parole Board*, 292 Kan. 336, 341, 255 P.3d 9 (2011). We do so here in finding that the 2011 revisions evidence legislative intent that the Secretary of Corrections no longer supervise DUI offenders, post-incarceration. Thus any violation of the conditions of postimprisonment supervision subjects such person to revocation by the district court pursuant to the terms of K.S.A. 2016 Supp. 8-1567(b)(3) ("Any violation of the conditions of such supervision may subject such person to revocation of supervision and imprisonment in jail for the remainder of the period of imprisonment, the remainder of the supervision period, or any combination or portion thereof.").

Castillo asks us to vacate the district court's order and remand her case to the designated supervisory agency with directions to hold a hearing on whether she violated her supervised release and, if so, what penalty ought to be imposed. But Castillo shows us no procedure by which that agency could do so. The legislature omitted in 2011 the provision from the DUI statute that "[a]ny violation of the conditions of such postrelease supervision may subject such person to revocation of postrelease supervision pursuant to K.S.A. 75-5217 et seq." K.S.A. 2010 Supp. 8-1567. That statute permits the Secretary of Corrections to issue a warrant for the arrest of a released inmate for violating any of the conditions of release and to conduct a hearing, under stated procedures, on the violation charged. Castillo's position would have us read the omitted reference to K.S.A. 75-5217 back into the DUI statute, effectively negating the legislature's removal of it in 2011 and leaving us without any known procedures by which a supervising agency could legally determine postimprisonment violations for DUI offenders.

13

Finally, we have previously held that postimprisonment supervision for DUI is "akin to probation" and that a district court can revoke postimprisonment supervision. *State v. Beltran*, No. 112,970, 2015 WL 4487082, at *1 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1018 (2016). The *Beltran* court held that the district court had discretion to revoke postimprisonment supervision and to impose additional jail time where the defendant admitted to having violating the conditions of supervision. 2015 WL 4487082, at *1. As did Beltran, Castillo admitted having violated the terms of her supervision.

We find no support for Castillo's argument that the period following her incarceration for DUI should be treated as postrelease supervision and, as a result, deprive the district court of jurisdiction. We find instead that the district court had jurisdiction to revoke Castillo's postimprisonment supervision for her DUI offenses.

Affirmed.